UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

UNITED STATES OF AMERICA,


- against -

TOMER DAFNA and AVRAHAM TARSHISH
a/k/a AVI TARSHISH,


Defendants.

-----------------------------------------------------------------

**MEMORANDUM & ORDER**
19-CR-408 (MKB)

MARGO K. BRODIE, United States District Judge:

On September 6, 2019, a grand jury returned an indictment against Defendants Tomer

Dafna and Avraham Tarshish,[1] charging them with conspiracy to commit wire and bank fraud in

violation of 18 U.S.C. §§ 1349 and 3551 *et seq.* ("Counts One and Two"), and substantive counts

of wire fraud related to specific transactions in violation of 18 U.S.C. §§ 1343, 2, and 3551 *et*

*seq.* ("Counts Three through Seven").[2]  (Indictment ("Ind.") ¶¶ 36–42, Docket Entry No. 1;

Grand Jury Investigations Covering Mem., annexed to Ind. as Ex. 3, Docket Entry No. 1-3.)  The

Indictment alleges that Defendants engaged in conspiracies to defraud lenders and certain

borrowers (collectively, the "Short Sale Victims") "by providing them with false, misleading and

incomplete information to induce them to execute short sales at fraudulently depressed prices,

---

[1]  The grand jury also returned the indictment against co-Defendants Iskyo Aronov,
Michael Konstantinovskiy, and Michael Herskowitz, all of whom have pleaded guilty.  Aronov
pleaded guilty to Counts One and Two in July of 2022, Herskowitz pleaded guilty to Count One
in June of 2024, and Konstantinovskiy pleaded guilty to Count One in July of 2024.  (Min. Entry
dated July 11, 2022; Min. Entry dated June 27, 2024; Min. Entry dated July 29, 2024.)

[2]  The Indictment was unsealed on September 12, 2019.  (Order dated Sept. 12, 2019,
Docket Entry No. 8.)

thereby causing losses to the lenders and, at times, the borrowers" (the "Short Sale Schemes").

(Ind. ¶ 18.)

On August 2, 2024, the government moved to exclude speedy trial time from July 16,

2024 until the final disposition of Defendants' anticipated motion to dismiss the Indictment.

(Gov't Mot. to Exclude Speedy Trial Time ("Gov't Mot."), Docket Entry No. 351; Defs.' Opp'n

to Gov't Mot. ("Defs.' Opp'n"), Docket Entry No. 352.)  On August 20, 2024, Defendants jointly

moved to dismiss the Indictment, arguing that the government has violated their right to a speedy

trial pursuant to the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, and the Sixth Amendment.[3]  The

Government opposed the motion.[4]  (Gov't Opp'n to Defs.' Mots. ("Gov't Opp'n"), Docket Entry

No. 370.)  For the reasons set forth below, the Court denies Defendants' motion to dismiss the

Indictment on speedy trial grounds and grants in part the government's motion to exclude speedy

trial time.

## I.  Background

### a.  Factual background

According to the Indictment, from in or about December of 2012 to January of 2019,

Defendants "worked both together and separately to purchase hundreds of properties at

---

[3]  (Defs.' Joint Mot. to Dismiss ("Defs.' Speedy Trial Mot."), Docket Entry No. 363;
Defs.' Mem. in Supp. of Defs.' Speedy Trial Mot. ("Defs.' Speedy Trial Mem."), Docket Entry
No. 364; Defs.' Reply Mem. in Supp. of Defs.' Speedy Trial Mot. ("Defs.' Speedy Trial Reply"),
Docket Entry No. 373.)

[4]  In its submission, the government opposed Defendants' motion to dismiss, and also
opposed a separate motion for the release of *Brady* materials and exclusion of certain evidence.
(Defs.' Joint Mot. for Release of *Brady* Materials ("Defs.' *Brady* Mot."), Docket Entry No. 361;
Defs.' Mem. in Supp. of Defs.' *Brady* Mot. ("Defs.' *Brady* Mem."), Docket Entry No. 361-1;
Defs.' Reply Mem. in Supp. of Defs.' *Brady* Mot. ("Defs.' *Brady* Reply"), Docket Entry No.
371.)  For purposes of this Memorandum and Order, the Court only addresses Defendants'
motion to dismiss the Indictment for speedy trial reasons.

fraudulently depressed prices and then resell or 'flip' the properties for large profits." (Ind.

¶ 18.)  The Short Sale Schemes "originated at [My Ideal Property ("MIP")] under the direction of

[Aronov] with the assistance of [Konstantinovskiy and Tarshish], Short-Sale Co-Conspirators 1,

2 and 3, and others" (the "MIP Scheme") and the scheme was later replicated by Tarshish and

Dafna "at Exclusive Homes with the assistance of Short-Sale Co-Conspirator 2 and others" (the

"Exclusive Homes Scheme").  (*Id.* ¶ 19.)

      The Indictment alleges that Defendants conspired to defraud lenders and certain

borrowers by "providing them with false, misleading and incomplete information to induce them

to execute short sales at fraudulently depressed prices, thereby causing losses to the lenders and,

at times, the borrowers." (*Id.* ¶ 18.)  The Indictment also alleges, among other things, that

Defendants "typically promised to pay or paid the borrower money to induce him or her also to

sign (a) an agreement with a real estate broker to list the property for sale; (b) an authorization to

allow a third-party negotiator to negotiate the short sale with the lender on the borrower's behalf;

and (c) a contract to sell the property to a corporate entity controlled by [Defendants]," (*id.* ¶ 20),

and that "[a]fter the borrower agreed to participate in a short sale of a property with

[Defendants], [Defendants] often took control of the property, evicted or paid any tenants living

in the property to move out and, on occasion, arranged to damage the property to lower its

appraised value," (*id.* ¶ 21).

      **b.   Procedural background**

      On September 6, 2019, a grand jury returned an indictment against Defendants charging

them with conspiracy to commit wire and bank fraud in violation of 18 U.S.C. §§ 1349 and 3551

*et seq.*, and substantive counts of wire fraud related to specific transactions in violation of 18

U.S.C. §§ 1343, 2, and 3551 *et seq.*.  Dafna and Tarshish were charged in Counts One, Two, and

Four through Seven.  (Ind. ¶¶ 37, 39, 42.)  On September 10, 2019, Magistrate Judge Lois Bloom arraigned both Dafna and Tarshish and entered an order excluding speedy trial time from September 10, 2019 through October 2, 2019 because the parties were engaged in plea negotiations that they believed were likely to result in a disposition of the case without trial.  (*See* Min. Entry dated Sept. 10, 2019, Docket Entry No. 13; Min. Entry dated Sept. 10, 2019, Docket Entry No. 18; Order to Continue dated Sept. 10, 2019, Docket Entry No. 14; Order to Continue dated Sept. 10, 2019, Docket Entry No. 20.)  On October 2, 2019, following a status conference with all parties present, the Court entered an order to continue the proceedings, excluding speedy trial time from October 2, 2019 until December 3, 2019, on which date the Court held a second status conference, also with all parties present.  (Min. Entry dated Oct. 2, 2019; Order to Continue dated Oct. 2, 2019; Min. Entry dated Dec. 3, 2019.)  Following the December 3, 2019 status conference, the Court entered an order to adjourn the case and exclude time until February 4, 2020.  (Order to Continue dated Dec. 3, 2019.)

The Court held another status conference on February 4, 2020, at which all parties were present, and the Court then adjourned the case until April 28, 2020 and excluded speedy trial time until that date.  (Min. Entry dated Feb. 4, 2020; Order to Continue dated Feb. 4, 2020.)  On April 23, 2020, Defendants and the government jointly moved for an adjournment of the April 28, 2020 status conference to June 11, 2020, and the government requested that speedy trial time be excluded due to the ongoing COVID-19 pandemic, ongoing plea negotiations between the government and some of the Defendants, and ongoing privilege review for materials seized pursuant to search warrants.  (Mot. to Continue, Docket Entry No. 117.)  The Court granted the motion and entered an order excluding speedy trial time until June 11, 2020.  (Order Granting Mot. to Continue dated Apr. 23, 2020; Order to Continue dated Apr. 23, 2020.)  The parties then

jointly requested seven additional adjournments, and the Court granted the parties' joint requests to exclude time for each adjournment, excluding time through March 23, 2021.[5]  On May 25, 2020, Defendants filed a joint motion for a bill of particulars, which the Court later granted in part and denied in part.  (Defs. Mot. for Bill of Particulars, Docket Entry No. 118; Mem. & Order dated May 6, 2021, Docket Entry No. 181.)[6]

On March 23, 2021, the Court held a status conference attended by all parties, after which the Court entered an order excluding speedy trial time until May 7, 2021.  (Min. Entry dated Mar. 23, 2021; Order to Continue dated Mar. 23, 2021.)  Following the status conference, the parties again requested seven separate continuances as well as the exclusion of speedy trial time for the continuances, all of which the Court granted, issuing separate orders for each excluding time for ends-of-justice reasons.[7]

---

[5] (*See* Mot. to Continue, Docket Entry No. 119; Order Granting Mot. to Continue dated June 2, 2020; Order to Continue dated June 2, 2020; Mot. to Continue, Docket Entry No. 131; Order Granting Mot. to Continue dated Aug. 4, 2020; Order to Continue dated Aug. 4, 2020; Mot. to Continue, Docket Entry No. 138; Order Granting Mot. to Continue dated Sept. 14, 2020; Order to Continue dated Sept. 28, 2020; Mot. to Continue, Docket Entry No. 149; Order Granting Mot. to Continue dated Oct. 23, 2020; Mot. to Continue, Docket Entry No. 151; Order Granting Mot. to Continue dated Nov. 24, 2020; Order to Continue dated Nov. 24, 2020; Mot. to Continue, Docket Entry No. 155; Order Granting Mot. to Continue dated Jan. 13, 2021; Order to Continue dated Jan. 13, 2021; Mot. to Continue, Docket Entry No. 160; Order Granting Mot. dated Feb. 23, 2021; Order to Continue dated Feb. 23, 2021.)  The Court notes that the order excluding time from September 14, 2020 through October 29, 2020 was issued on September 28, 2020.  (Order to Continue dated Sept. 28, 2020.)

[6] The government responded to Defendants' motion for a bill of particulars on April 9, 2021, and the Court issued a Memorandum and Order on May 6, 2021.  (Defs. Mot. for Bill of Particulars; Gov't Opp'n to Defs. Mot. for Bill of Particulars, Docket Entry No. 172; Mem. & Order dated May 6, 2021.)

[7] (*See* Mot. to Continue, Docket Entry No. 179; Order Granting Mot. to Continue dated May 5, 2021; Order to Continue dated May 5, 2021; Mot. to Continue, Docket Entry No. 187; Order Granting Mot. to Continue dated June 1, 2021; Order to Continue dated June 1, 2021; Mot. to Continue, Docket Entry No. 198; Order Granting Mot. to Continue dated July 2, 2021; Order

On April 1, 2022, the Court held a status conference at which all parties were present, and ordered speedy trial time excluded "in the interests of justice" until June 3, 2022 "to allow for the review of discovery and to allow for plea negotiations." (Min. Entry dated Apr. 1, 2022.) After a single adjournment requested by the parties for which time was excluded for ends-of-justice reasons, (*see* Mot. to Continue, Docket Entry No. 242; Order Granting Mot. to Continue dated June 2, 2022; Order to Continue dated June 2, 2022), the Court held another status conference on July 15, 2022, at which time the Court set June 26, 2023 as the date for trial, which was later changed to June 20, 2023, (Min. Entry dated July 15, 2022; Order dated Sept. 19, 2022). The Court then excluded speedy trial time until October 7, 2022 for ends-of-justice reasons. (Order to Continue dated July 15, 2022.) On October 7, 2022, the Court held a status conference at which all parties were present and represented to the Court that they were ready to proceed with trial as scheduled in June of 2023. (Min. Entry dated Oct. 7, 2022.) The Court then excluded time through December 2, 2022 for ends-of-justice reasons. (Order to Continue dated Oct. 7, 2022.)

After an adjournment requested by both parties, (*see* Mot. to Continue, Docket Entry No. 268; Order Granting Mot. to Continue dated Dec. 1, 2022; Order to Continue dated Dec. 1, 2022), the Court held a status conference on February 10, 2023, which all parties attended. (Min. Entry dated Feb. 10, 2023.) At the February 10, 2023 status conference, and in a letter filed on February 14, 2023, Defendants raised concerns about additional discovery the

---

to Continue dated July 2, 2021; Mot. to Continue, Docket Entry No. 205; Order Granting Mot. to Continue dated Aug. 18, 2021; Order to Continue dated Aug. 18, 2021; Mot. to Continue, Docket Entry No. 217; Order Granting Mot. to Continue dated Sept. 27, 2021; Order to Continue dated Sept. 27, 2021; Mot. to Continue, Docket Entry No. 228; Order Granting Mot. to Continue dated Dec. 6, 2021; Order to Continue dated Dec. 6, 2021; Mot. to Continue, Docket Entry No. 237; Order Granting Mot. to Continue dated Feb. 16, 2022; Order to Continue dated Feb. 16, 2022.)

government had indicated that it planned to produce, consisting of data it had recovered from computers previously owned by the real estate company owned by one of the Defendants (the "191 Patchen Devices"). (Defs.' Letter dated Feb. 14, 2023, Docket Entry No. 278.) The Court held two additional status conferences on March 10, 2023 and March 31, 2023 at which the parties discussed the issue with the Court, and the Court excluded speedy trial time between February 10, 2023 and March 31, 2023 for ends-of-justice reasons.[8] During the March 31, 2023 status conference, Defendants "informed the court of the burden imposed on [Defendants'] vendor to review the materials produced by the government." (Min. Entry dated Mar. 31, 2023.) The Court directed the government to work with Defendants' vendor, granted Defendants' request for additional time to review the material from the 191 Patchen Devices, and adjourned trial until February 12, 2024. (*Id.*) The Court stated at the conference that it was excluding time until the next status conference or the scheduled trial date, and on April 17, 2023, also entered an order excluding time for ends-of-justice reasons from March 31, 2023 until May 25, 2023, the date of the next status conference. (Tr. of Mar. 31, 2023 Status Conf. 25:14–20, Docket Entry No. 338; Order to Continue dated Apr. 17, 2023.)

After the May 25, 2023 status conference the Court excluded time through September 5, 2023, the date of the next scheduled status conference. (Min. Entry dated May 25, 2023; Order to Continue dated May 25, 2023.) The parties made several requests for adjournments of later status conferences, and the Court excluded speedy trial time based on each request for

---

[8] (*See* Order to Continue dated Feb. 10, 2023; Min. Entry dated Mar. 10, 2023; Order to Continue dated Mar. 10, 2023; Min. Entry dated Mar. 31, 2023.)

ends-of-justice reasons.[9]  On October 5, 2023, and November 16, 2023, the Court held status

conferences with the parties, and at the November 16, 2023 status conference, the Court

adjourned the trial to July 29, 2024, which was later further adjourned to August 12, 2024, due to

Defendants' counsels' scheduling conflicts.  (Min. Entry dated Oct. 5, 2023; Min. Entry dated

Nov. 16, 2023; Min. Entry dated May 21, 2024.)  The Court entered orders after both status

conferences, and excluded speedy trial time through February 13, 2024, the date of the next

status conference, for ends-of-justice reasons.  (*See* Order to Continue dated Oct. 5, 2023

(excluding time through November 16, 2023); Order to Continue dated Nov. 16, 2023 (excluding

time through February 13, 2024).)  The Court held three additional status conferences prior to the

anticipated trial date, and excluded time after the first two.[10]  The Court did not issue an order

excluding time after the pretrial conference held on July 1, 2024.[11]

On July 8, 2024, at the Court's direction, the government filed a supplemental

memorandum in further support of its outstanding motion *in limine* regarding whether one of the

government's proposed witnesses' anticipated testimony was expert or fact witness testimony,

and on July 10, 2024 the Court issued a Memorandum and Order on the parties' motions *in*

---

[9]  (*See* Mot. to Continue, Docket Entry No. 297; Order Granting Mot. to Continue dated
Aug. 31, 2023; Order to Continue dated Sept. 7, 2023 (excluding time from September 6, 2023
until October 5, 2023).)  The Court notes that the order excluding time from September 6, 2023
until October 5, 2023 was filed on September 7, 2023.  (Order to Continue dated Sept. 7, 2023.)

[10]  (Min. Entry dated Feb. 13, 2024; Order to Continue dated Feb. 13, 2024 (excluding
time through May 1, 2024); Mot. to Continue, Docket Entry No. 309 (requesting an adjournment
and consenting to the exclusion of speedy trial time); Order Granting Mot. to Continue dated
Apr. 30, 2024; Min. Entry dated May 21, 2024; Order to Continue dated May 21, 2024
(excluding time from May 21, 2023 through July 1, 2024); Min. Entry dated July 1, 2024.)

[11]  The Court inadvertently did not exclude time on the record for this period.  However,
as discussed *infra*, there was a pending motion *in limine* during the period from July 1, 2024
through July 31, 2024, the date of the next status conference.

*limine*.  (*See* Mem. & Order dated July 10, 2024, Docket Entry No. 333.)  On July 16, 2024, Defendants filed requests for a pre-motion conference regarding their anticipated motion to dismiss the Indictment.  (*See* Tarshish Letter dated July 16, 2024, Docket Entry No. 334; Dafna Letter dated July 16, 2024, Docket Entry No. 336.)

  The Court held a pretrial conference on July 31, 2024, at which Defendants discussed their anticipated motion to dismiss the Indictment, as well as the fact that the government's recent pretrial disclosures included a significant volume of evidence, including a full extraction from the phone of a cooperator, only portions of which had previously been disclosed to Defendants.  (Min. Entry dated July 31, 2024.)  Defendants argued that the government had, in the weeks leading up to trial, disclosed a large amount of additional discovery, some of which was potentially exculpatory.  (Tr. of July 31, 2024 Status Conf. ("July 31 Tr.") 3:19–15:3, Docket Entry No. 354.)  Defendants stated that they were unable to proceed with the anticipated trial date of August 12, 2024 due to the volume of the new discovery, but emphasized that they did not waive their speedy trial rights and felt they had no other choice but to request an adjournment in order to properly review the additional discovery.  (*Id.* at 38:23–39:10.)  The Court determined that an adjournment was necessary to allow Defendants' counsel adequate time to review the additional discovery, and noted that it would make adjustments to its own calendar to ensure trial commenced as soon as Defendants thought it would be feasible.  (*Id.* at 54:9–13.)  The Court also ruled on the pending motion *in limine* regarding the testimony of the government's anticipated witness.  (Min. Entry dated July 31, 2024.)

  On August 2, 2024, the government filed a motion to exclude speedy trial time for the period from July 16, 2024 until the final disposition of Defendants' motions to dismiss the Indictment, which Defendants opposed.  (Gov't Mot.; Defs.' Opp'n.)

On August 20, 2024, Defendants jointly moved to dismiss the Indictment, arguing that the government has violated their right to a speedy trial pursuant to the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, and the Sixth Amendment.  (Defs.' Speedy Trial Mot.)  The government opposed the motion.  (Gov't Opp'n.)

## II. Discussion

### a. The Court denies Defendants' motion to dismiss the Indictment

#### i. Speedy Trial Act

The Speedy Trial Act (the "Act"), 18 U.S.C. § 3161 *et seq.*, sets time limits on the two phases of prosecution: the time-period between arrest/service of summons and an indictment and the time-period between arraignment and trial.  18 U.S.C. § 3161(b)–(c); *see United States v. Bursey*, 801 F. App'x 1, 2 (2d Cir. 2020), *cert. denied sub nom. Carpenter v. United States*, 141 S. Ct. 820 (Nov. 9, 2020); *United States v. Akhavan*, 523 F. Supp. 3d 443, 447 (S.D.N.Y. 2021); *United States v. Carrilllo-Villa*, 451 F. Supp. 3d 257, 259 (S.D.N.Y. 2020).  The Act "provides that a criminal case shall be brought to trial within [seventy] days, subject to limited exclusions." *United States v. Pikus*, 39 F.4th 39, 42 (2d Cir. 2022); *see also United States v. Hoskins*, 44 F.4th 140, 152 (2d Cir. 2022) ("The [Speedy Trial Act] requires a defendant's trial to commence within [seventy] days of his indictment or first appearance (whichever is later)[.]").  When an indictment or trial is not commenced within the prescribed period of time, "the information or indictment shall be dismissed on motion of the defendant." *Zedner v. United States*, 547 U.S. 489, 508 (2006) (emphasis omitted) (quoting 18 U.S.C. § 3162(a)(2)); *United States v. Bert*, 814 F.3d 70, 78 (2d Cir. 2016) ("If th[e] deadline is not met, the Act provides that the indictment 'shall be dismissed on motion of the defendant.'" (quoting 18 U.S.C. § 3162(a)(2))).  "'[T]he public has as great an interest in a prompt criminal trial as has the defendant,' thus the Speedy

Trial Act requires dismissal even where the parties have consented to adjournments other than those expressly allowed in the Act." *Pikus*, 39 F.4th at 52 (quoting *United States v. Gambino*, 59 F.3d 353, 360 (2d Cir. 1995)); *see Zedner*, 547 U.S. at 502–03.  On such a motion, the defendant bears the burden of proving a Speedy Trial Act violation.  *See* 18 U.S.C. § 3162 (a)(2) (providing that "[t]he defendant shall have the burden of proof of supporting such motion but the [g]overnment shall have the burden of going forward with the evidence in connection with any exclusion of time under subparagraph 3161(h)(3)"); *United States v. Adams*, 448 F.3d 492, 503 (2d Cir. 2006) ("Defendant bears the burden of proof supporting such a motion.").  If the defendant establishes a violation of the Speedy Trial Act, the government "would need to come forward with evidence demonstrating the reason for any delay."  *United States v. Morgan*, 493 F. Supp. 3d 171, 201 (W.D.N.Y. 2020).

The Act provides a detailed scheme through which periods of delay attributable to specified reasons are excluded from the seventy-day calculation.  *See* 18 U.S.C. § 3161(h).  Some enumerated sources of delay are automatically excluded: for example, "delay resulting from any pretrial motion," *id.* § 3161(h)(1)(D); "delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district," *id.* § 3161(h)(1)(E); "delay resulting from transportation of any defendant from another district . . . [not] in excess of ten days from the date [of] an order of removal," *id.* § 3161(h)(1)(F); and "delay resulting from the absence or unavailability of the defendant or an essential witness," *id.* § 3161(h)(3)(A).  In addition to these automatic exclusions, the Court may exclude periods of time in the interests of justice.  Specifically, the seventy-day clock does not run:

> if the judge granted [a] continuance on the basis of his findings that
> the ends of justice served by taking such action outweigh the best
> interest of the public and the defendant in a speedy trial.  No such
> period of delay resulting from a continuance granted by the court in

> accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

*Id.* § 3161(h)(7)(A); *United States v. Leroux*, 36 F.4th 115, 123 (2d Cir. 2022) (quoting 18 U.S.C. § 3161(h)(7)(A)); *see United States v. Breen*, 243 F.3d 591, 595–96 (2d Cir. 2001).  "[I]n determining whether to grant [such] a continuance," the Court "shall consider" certain enumerated factors, "among other[]" non-enumerated factors; enumerated factors include "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice."  18 U.S.C. § 3161(h)(7)(B)(i).[12]  Time may not be excluded pursuant to this provision, however, "because of . . . lack of diligent preparation . . . on the part of the attorney for the [g]overnment."  18 U.S.C. § 3161(h)(7)(C); *see also United States v. Gonzalez*, No. 20-CR-335, 2021 WL 2418437, at *3 (S.D.N.Y. June 14, 2021) (same (quoting 18 U.S.C. § 3161(h)(7)(C))).  The Second Circuit has held that "[g]overnment failure to comply with discovery rules can prevent exclusion of time from speedy trial calculations if that failure is chronic or in bad faith."  *United States v. Esquilin*, 205 F.3d 1325, 2000 WL 232162, at *2 (2d Cir. 2000) (unpublished table decision) (citing *United States v. Anderson*, 902 F.2d 1105, 1109 (2d Cir. 1990)).  Courts have therefore determined that a showing of "bad faith" or "unjustifiable" conduct must be made in order to

---

[12]  The Second Circuit has held that "the precise reasons for the decision [to grant a continuance]" under the Speedy Trial Act "need not be entered on the record at the time the continuance is granted," and that, "[a]lthough the district court must decide initially whether to grant [an ends-of-justice] continuance, . . . the purposes of the statute are satisfied by a subsequent articulation."  *United States v. Breen*, 243 F.3d 591, 596 (2d Cir. 2001) (alterations in original) (quoting *United States v. Brooks*, 697 F.2d 517, 522 (3d Cir. 1982)); *see also Leroux*, 36 F.4th at 123 (same).

retroactively include time that was previously excluded based on the government's lack of diligent preparation. *See, e.g.*, *United States v. Jain*, No. 19-CR-59, 2020 WL 6047812, at *11 (S.D.N.Y. Oct. 13, 2020) (noting that "rescinding exclusions" under the Speedy Trial Act requires "'bad faith' conduct or an 'unjustifiable' lack of diligent preparation"); *United States v. Reichberg*, No. 16-CR-468, 2018 WL 6599465, at *7 (S.D.N.Y. Dec. 14, 2018) ("Conduct on the part of the 'attorney for the [g]overnment' demonstrates a lack of diligent preparation within the meaning of Subsection (h)(7)(C) if that conduct is 'unjustifiable.'" (quoting *United States v. Vasquez*, No. 87-CR-526, 1989 WL 82422, at *5 (S.D.N.Y. July 17, 1989))).

Dismissal of an indictment for a Speedy Trial Act violation may be with or without prejudice to reinstatement of the charges. 18 U.S.C. § 3162(a)(2). "The statute does not establish a preference between dismissal with or without prejudice, and in deciding between the two, the Court considers: (1) the seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; (3) the impact of a re-prosecution on the administration of the Speedy Trial Act and on the administration of justice; and (4) the presence or absence of prejudice to defendant." *United States v. Pecoraro*, 592 F. Supp. 3d 4, 10 (N.D.N.Y. 2022) (quoting *United States v. Peppin*, 365 F. Supp. 2d 261, 263–64 (N.D.N.Y. 2005)); 18 U.S.C § 3162(a)(1)); *see also United States v. Taylor*, 487 U.S. 326, 336 (1988) (noting that "district court[s] must carefully consider [each] factor[]" and "clearly articulate their effect"); *Bert*, 814 F.3d at 79 (listing the same four factors to be considered in determining whether dismissal should be with or without prejudice).

### 1.   Retroactive inclusion of time

Defendants argue that the Court should dismiss the Indictment because Defendants' rights under the Speedy Trial Act have been violated where previous ends-of-justice exclusions

were not warranted based on new evidence demonstrating the government's lack of diligent preparation and misleading statements to the Court and Defendants.  (Defs.' Speedy Trial Mem. 17.)  In particular, Defendants point to the government's repeated representations that the "bulk of discovery" had been produced in February of 2020, March of 2021, and July of 2022, despite its failure to produce the 191 Patchen materials, the full contents of the phone of its primary cooperator, and other materials the government produced in June and July of 2024 that Defendants assert have been in the government's possession for years.  (*Id.* at 20–22.)

The government argues that Defendants' statutory speedy trial rights have not been violated because Defendants cannot revoke their consent to prior orders of excludable delay.  (Gov't Opp'n 22.)  In support, the government argues that (1) Defendants' motion is untimely, (2) the motions excluding time were properly granted, and (3) even if they could revoke their own previous consent, Dafna and Tarshish cannot revoke the consent of their two co-Defendants with whom their case was joined, and the consent of those two co-Defendants binds the moving Defendants.  (*Id.* at 22–29.)

Despite the government's repeated failure to timely produce certain discovery, Defendants have not shown that the government's failure to produce this discovery was made in "bad faith" such that it warrants the retroactive inclusion of previously excluded time.  *Esquilin*, 2000 WL 232162, at *2; *see also, e.g.*, *Jain*, 2020 WL 6047812, at *11 ("Courts in this district have concluded that excluding time under the Speedy Trial Act requires 'bad faith' conduct or an 'unjustifiable' lack of diligent preparation.").

Defendants cite *United States v. Morgan*, 493 F. Supp. 3d 171 and *United States v. Graham*, No. 21-CR-194, 2022 WL 2873876 (W.D.N.Y. May 2, 2022), in support of their argument that time previously excluded should be retroactively included due to a lack of

14

diligence on the part of the government.  (Defs.' Mem. 18–19.)  Both cases, however, are distinguishable from the circumstances before the Court.  In *Morgan*, the magistrate judge issued an order that the exclusion of time was "conditioned on the government producing the voluntary discovery in its possession by" a specified date.  493 F. Supp. 3d at 206.  The government failed to comply with that requirement, and therefore the court concluded that the time was included in the running of the speedy trial clock.  *Id.*

In *Graham*, the Court initially excluded time based on specific findings on the record that the government represented it would use "the three-month period to provide discovery to defense counsel," and the defendant consented based on those representations, but the government instead "failed to engage in any of" the promised activities and "did not provide any discovery or engage in any plea negotiations" during the excluded time.  2022 WL 2873876, at *3.  The court in *Graham* specified that its decision to retroactively include that time was based on the fact that the government, like in *Morgan*, had "wholly failed to engage in any of the activities on which the interest of justice exclusion was based."[13]  *Id.* at *4 n.8.

The circumstances at issue here are more in line with those present in *Jain*, 2020 WL 6047812.  In *Jain*, the government, after discovering that it had in its possession data from additional devices containing "approximately 5 terabytes of data" produced the data less than

---

[13]   The court in *Graham* specifically likened the circumstances at issue to those in *Morgan*, and distinguished *Jain*, 2020 WL 6047812, and *Reichberg*, 2018 WL 6599465.  2022 WL 2873876, at *4 n.8.  In *Jain* and *Reichberg*, after engaging in pretrial discovery, the government discovered that it had failed to disclose large amounts of discovery, and in *Reichberg*, the government had made representations that the "large bulk of discovery" had already been produced before discovering additional materials it had not yet disclosed.  *See Jain*, 2020 WL 6047812, at *5–6; *Reichberg*, 2018 WL 6599465, at *3–4.  The court in *Graham* noted that in those cases, "the government engaged in extensive pretrial discovery only to inadvertently fail to disclose some materials."  2022 WL 2873876, at *4 n.8.

two months prior to trial, resulting in an adjournment of trial.  *Id.* at \*5–6.  Unlike in *Morgan* and *Graham*, the government did not fail to comply with conditions pursuant to which the Court excluded time.  Rather, as in *Jain*, although the government previously made inaccurate representations about the completion of discovery, and has twice untimely revealed discovery materials, it has, at each juncture, continued to provide the discovery that it inadvertently failed to previously disclose.  The government's failure to produce the data therefore appears to have been due to inattentiveness and other "inexcusable failures [that] bespeak of negligence and not conduct that was intentional or recklessly indifferent" to Defendants' rights.  *Jain*, 2020 WL 6047812, at \*1, \*11 (concluding that "[t]he fact that the government's statements regarding its discovery material proved to be inaccurate does not provide a basis for rescinding exclusions under the Speedy Trial Act" where the government, just over one month before the scheduled trial date, advised the Court that it had recently learned it was in possession of additional discovery materials not previously produced, "despite representations that discovery was complete"); *see also Reichberg*, 2018 WL 6599465, at \*11 ("[W]hile the [c]ourt was troubled by the [g]overnment's failure to produce the entirety of the wiretap evidence in a timely fashion despite their multiple representations to the contrary, and later questioned the diligence of the [g]overment in that regard, the [c]ourt did not find that the attorneys for the Government had demonstrated an unjustifiable lack of diligence in their preparation — particularly given the complexity and scope of discovery in the case as a whole[.]").

The Court therefore declines to retroactively include time previously excluded based on the government's lack of diligence.

## 2.    Speedy Trial Act clock

Defendants also argue that in the alternative, setting aside the delays resulting from the government's alleged lack of diligence, more than seventy days have run on the Speedy Trial Act clock because (1) a total of thirteen days were impermissibly excluded retroactively, (2) a total of 636 days were excluded pursuant to the ends-of-justice exception without sufficient findings stated on the record, and (3) a total of sixty-three days were not excluded under any provision of the Speedy Trial Act.  (Defs.' Mem. 26.)

The government argues that less than seventy days have elapsed on the Speedy Trial Act clock and therefore dismissal is not warranted.  (Gov't Opp'n 29.)  The government contends that, contrary to Defendants' assertions, the periods from September 16, 2020 to September 27, 2020; May 2, 2024 to May 16, 2024; September 5, 2023 to September 7, 2023; and July 2, 2024 to August 18, 2024 were properly excluded under the Speedy Trial Act, either as ends-of-justice exclusions or enumerated exclusions pursuant to Section 3161(h)(1).  (*Id.* at 30–38.)  The government also argues that each ends-of-justice exclusion provided sufficient reasoning on the record, and that several of the exclusions were independently excludable due to administrative orders issued during the COVID-19 pandemic and other automatic exclusions.  (*Id.* at 38–42.)

Less than seventy days have elapsed on the speedy trial clock, and the Court therefore denies Defendants' motion to dismiss the Indictment on this basis.

### A.    Retroactive orders to exclude time

The period from September 16, 2020 through September 27, 2020, and September 6, 2023, were properly excluded.

First, Defendants contend that the period from September 16, 2020 through September 27, 2020 is non-excludable time because the Court issued an order on September 28, 2020

retroactively excluding time from September 15, 2023 through October 29, 2020.  Speedy trial

time is automatically excluded, however, for the periods of delay enumerated in Section 3161(h),

including delay resulting from pretrial motions pursuant to Section 3161(h)(1)(D).  *See Pikus*, 39

F.4th at 52 (noting that delays pursuant to Section 3161(h)(1)(D) are "automatically excluded");

*United States v. Bailey*, No. 15-CR-6082G, 2016 WL 6471358, at *5 (W.D.N.Y. Nov. 1, 2016)

("The law is crystal clear that the exclusion under [18 U.S.C. § 3161(h)(1)(D)] is *automatic* and,

by contrast to the [S]ection 3161(h)(7) interests of justice exclusion . . . , does not require any

specific findings by the court." (citing, *inter alia*, *United States v. Tinklenberg*, 563 U.S. 647,

656–60 (2011))).  Section 3161(h)(1)(D) specifies that any period of "delay resulting from any

pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other

prompt disposition of, such motion" will be excluded. *See Bailey*, 2016 WL 6471358, at *5.

  On May 25, 2020, Defendants filed a joint motion for a bill of particulars, which the

government responded to on April 9, 2021, and on which the Court issued a decision on May 6,

2021.  (Defs.' Mot. for Bill of Particulars; Gov't Opp'n to Defs.' Mot. for Bill of Particulars;

Mem. & Order dated May 6, 2021.)  At least one pretrial motion was therefore pending during

the period of September 16, 2020 through September 27, 2020, and time is automatically

excluded from the Speedy Trial Act clock for that time period, regardless of the date of the

Court's exclusion order.  *See, e.g.*, *Bailey*, 2016 WL 6471358, at *3, *6 (concluding time had

been automatically excluded while pretrial motions, including a motion for a bill of particulars,

were pending).

  Second, Defendants contend that September 6, 2023 was not properly excluded because

the Court's Order issued on September 7, 2023 excluding time from September 6, 2023 through

October 5, 2023 was an impermissible retroactive exclusion of time.  The practice of issuing

orders making retroactive ends-of-justice findings pursuant to 18 U.S.C. § 3161(h)(7) is disfavored, although the "outer bounds of making this finding explicit" is "at the very least[,] . . . by the time a district court rules on a defendant's motion to dismiss under [Section] 3162(a)(2)." *United States v. Hoskins*, 44 F.4th 140, 154 (2d Cir. 2022) (alteration in original) (quoting *Zedner*, 547 U.S. at 507); *see also Pikus*, 39 F.4th at 52 ("'[W]henever possible the district court "should make the findings required by [Section 3161(h)(7)] at the time it grants the continuance,"' and sufficient findings to support an ends of justice continuance 'must be put on the record by the time a district court rules on a defendant's motion to dismiss,' because 'without on-the-record findings, there can be no exclusion' under [Section] 3161(h)(7)." (first quoting *Breen*, 243 F.3d at 597; and then quoting *Zedner*, 547 U.S. at 507)).

The Court's September 7, 2023 Order excluding time for September 6, 2023 was not an impermissible retroactive exclusion of time.  On August 31, 2023, Defendants filed a motion to adjourn the status conference then scheduled for September 5, 2023 based on additional time needed for Defendants to properly review and "assess the impact of the production of" the materials from the 191 Patchen Devices disclosure.  (Mot. to Continue, Docket Entry No. 297.) The Court granted this motion, over the government's objection, the same day requested.  (Order Granting Mot. to Continue dated Aug. 31, 2023.)  An order issued one day after the beginning of the excludable time period and nearly one year before Defendants' motion to dismiss the Indictment on Speedy Trial Act grounds does not fall within the "outer bounds" of making an explicit finding that time should be excluded in the interest of justice.  *See, e.g.*, *Hoskins*, 44 F.4th at 153–54 (concluding the district court's retroactive ends-of-justice finding issued one year after the beginning of the excluded period, and nearly one month after the filing of the defendant's motion to dismiss the indictment on speedy trial grounds, was not an impermissible

retroactive ends-of-justice finding).  In addition, the Court granted Defendants' motion to continue in advance of the beginning of the period, which indicated that the basis for the Court's ends-of-justice exclusion of time was Defendants' own asserted need for additional time to properly review recently provided discovery, as stated in their own motion.  (*See* Tr. of Oct. 2, 2024 Status Conf. 36:11–18 ("[E]ach time I granted the parties['] individual or joint motions for continuance, I excluded time based on my own determination that that continuance serves the ends of justice and out[weighs] the best interest of public and the defendant in a speedy trial.").)

The periods from September 16, 2020 through September 27, 2020 and September 6, 2023 were therefore properly excluded pursuant to the Speedy Trial Act.

### B.   Ends-of-justice exceptions

Defendants next point to thirteen periods of time that they contend were improperly excluded pursuant to Section 3161(h)(7) due to insufficient findings being stated on the record to support the ends-of-justice exclusion of time pursuant to Section 3161(h)(7).[14]  (*See* Defs.' Speedy Trial Clock Appendix.)  These times were properly excluded from the speedy trial clock.

First, seven of the excluded periods raised by Defendants[15] were ordered as a result of motions to continue, filed either by Defendants or with Defendants' consent, that also jointly

---

[14]  The thirteen periods as defined by Defendants are as follows: (1) September 11, 2021 through September 30, 2021; (2) September 30, 2021 through December 8, 2021; (3) December 8, 2021 through February 18, 2022; (4) February 18, 2022 through March 31, 2022; (5) June 3, 2022 through July 14, 2022; (6) October 8, 2022 through November 28, 2022; (7) January 15, 2023 through February 9, 2023; (8) February 10, 2023 through March 10, 2023; (9) March 10, 2023 through March 31, 2023; (10) March 31, 2023 through May 25, 2023; (11) May 25, 2023 through September 5, 2023; (12) September 7, 2023 through October 4, 2023; and (13) February 13, 2024 through May 1, 2024.  (Defs.' Speedy Trial Clock Appendix, Docket Entry No. 364-1.)

[15]  The seven relevant periods are: (1) September 11, 2021 through September 30, 2021; (2) September 30, 2021 through December 8, 2021; (3) December 8, 2021 through February 18, 2022; (4) February 18, 2022 through March 31, 2022; (5) June 3, 2022 through July 14, 2022;

requested the exclusion of Speedy Trial Act time and which specified the circumstances justifying the exclusion of time.[16]  The Court granted each of the motions and also independently filed orders excluding time based on an ends-of-justice finding, and therefore indicated that the ends-of-justice exclusions were based on the circumstances as laid out by the parties.[17]  Even assuming that this was insufficient to show that the Court was adopting those facts as the Court's own findings, the Court later made clear on the record that in each case it had independently considered the parties' asserted reasoning for requesting an exclusion of time, and separately found that the ends of justice were served by granting the requested continuances.  (*See* Tr. of Oct. 2, 2024 Status Conf. 36:11–18); *see also United States v. Plaza-Andrades*, 507 F. App'x 22, 25 (2d Cir. 2013) (concluding the district court's findings were sufficient where "in addition to adopting the stipulated facts as the district court's own findings, the court also noted that it

---

(6) January 15, 2023 through February 9, 2023; and (7) September 7, 2023 through October 4, 2023.

[16]  (*See* Mot. to Continue, Docket Entry No. 205 (ongoing review of discovery, plea negotiations, and a pending motion to suppress); Mot. to Continue, Docket Entry No. 217 (ongoing review of discovery and plea negotiations); Mot. to Continue, Docket Entry No. 228 (same); Mot. to Continue, Docket Entry No. 237 (same); Mot. to Continue, Docket Entry No. 242 (ongoing review of discovery materials, plea negotiations, and one Defendant's process of retaining new counsel); Mot. to Continue, Docket Entry No. 268 (ongoing review of discovery materials and plea negotiations).  The Court notes that Tarshish's motion to continue, filed on August 31, 2023, did not request, or object to, the exclusion of time.  (Mot. to Continue, Docket Entry No. 297 (discussing Defendants' need for a thirty-day adjournment to "assess the impact of the production of" the materials from the 191 Patchen Devices).)

[17]  (Order Granting Mot. to Continue dated Aug. 18, 2021; Order to Continue dated Aug. 18, 2021; Order Granting Mot. to Continue dated Sept. 27, 2021; Order to Continue dated Sept. 27, 2021; Order Granting Mot. to Continue dated Dec. 6, 2021; Order to Continue dated Dec. 6, 2021; Order Granting Mot. to Continue dated Feb. 16, 2022; Order to Continue dated Feb. 16, 2022; Order Granting Mot. to Continue dated June 2, 2022; Order to Continue dated June 2, 2022; Order Granting Mot. to Continue dated Dec. 1, 2022; Order to Continue dated Dec. 1, 2022; Order Granting Mot. to Continue dated Aug. 31, 2023; Order to Continue dated Sept. 7, 2023; Order to Continue dated Oct. 5, 2023.)

considered its obligation . . . and separately found that . . . the ends of justice served by granting the requested continuance outweigh the best interests of the public and the defendants in a speedy trial," and concluding that it was "not a case where we are unclear whether the district court made its own findings" (internal quotation marks omitted) (citing *Parisi v. United States*, 529 F.3d 134 (2d Cir. 2008)).  The Court's findings in support of the ends-of-justice continuances were therefore "put on the record by the time" it ruled on Defendants' current motion to dismiss.  *Pikus*, 39 F.4th at 52–53 (quoting *Zedner*, 547 U.S. at 506–07).

Second, the remaining six ends-of-justice exclusion orders were accompanied by the Court's determinations on the record at status conferences that it was excluding time until the next conference.[18]  These determinations were made after discussion on the record regarding the parties' need for additional time, generally to continue reviewing discovery either from the 191 Patchen Devices or other disclosures, and were accompanied by the Court's direction to the parties that certain activities needed to take place before the subsequent conference.[19]  The Court

---

[18]  The relevant periods are: (1) October 8, 2022 through November 28, 2022; (2) February 10, 2023 through March 10, 2023; (3) March 10, 2023 through March 31, 2023; (4) March 31, 2023 through May 25, 2023; (5) May 25, 2023 through September 5, 2023; and (6) February 13, 2024 through May 1, 2024.

[19]  (*See, e.g.*, Tr. of Oct. 7, 2022 Status Conf. 9:4–10:14 (directing the parties to confer regarding anticipated motions *in limine* and 3500 material disclosure schedules in anticipation of trial); Tr. of Feb. 10, 2023 Status Conf. 29:11–30:21 (excluding time until the next status conference, noting there were no objections from the parties to the Court doing so, and directing the government to "have the results" of additional discovery searches by the next status conference so that the parties could decide on pretrial motion schedules); Tr. of Mar. 10, 2023 Status Conf. 11:11–18 (setting the next status conference, stating that "hopefully, by then, all of the searches would have been run, . . . and the results would have been provided to defense counsel so they have a better sense of where we are," and stating on the record that the Court would "exclude time between now and then in the interest of justice"); Tr. of Mar. 31, 2023 Status Conf. 23:12–13; 25:14–20 (excluding time with no objections from either party because "it is in the interest of justice . . . to do so," after a discussion regarding the volume of discovery and the government meeting with Defendants "to give a better sense of which properties they

therefore sufficiently provided its reasoning on the record for its ends-of-justice exclusions of time from the speedy trial clock. *See, e.g.*, *Fairley v. United States*, Nos. 08-CV-3823, 06-CR-89, 2011 WL 1097537, at *7 (S.D.N.Y. Mar. 22, 2011) (concluding that, in part, "the in-court discussion . . . make[s] clear that the [c]ourt was not simply signing off on the parties' agreement [for the exclusion of time] but intended to independently adopt the reasoning" of the parties).

The thirteen periods raised by Defendants were therefore properly excluded with sufficient on-the-record reasoning for the Court's ends-of-justice exclusions.

### C.   Periods for which no order excluding time was entered

Finally, Defendants point to two periods of time during which the Court did not enter a period of excludable delay, specifically (1) May 2, 2024 through May 16, 2024, and (2) July 2, 2024 through August 18, 2024.

First, on April 30, 2024, the parties filed a joint motion to continue a status conference initially set for May 1, 2024, and stated that Defendants consented to the exclusion of time because the parties agreed that no issues had arisen that required Court intervention or a conference.  (Mot. to Continue, Docket Entry No. 309.)  The Court granted the motion the same day.  (Order Granting Mot. to Continue dated Apr. 30, 2024.)  The Court did not issue a separate order at that time excluding time in the interest of justice until the next status conference on May 21, 2024, but has since stated on the record that where the parties jointly requested a continuance, the Court excluded time in the interests of justice for the reasons stated in the

---

plan to rely on" during trial); Tr. of May 25, 2023 Status Conf. 18:24–25 (excluding time until the next status conference, and stating that "[t]he hope is that all of the information will be loaded and provided to the defense by July, if not before");  Tr. of Feb. 13, 2024 Status Conf. 10:18–11:2 (excluding time "in the interest of justice with no objections from any of the defendants in view of the trial date that is set [for] July 29th").

continuance.  (Tr. of Oct. 2, 2024 Status Conf. 36:11–18 ("[E]ach time I granted the parties[']
individual or joint motions for continuance, I excluded time based on my own determination that
that continuance serves the ends of justice and out[weighs] the best interest of public and the
defendant in a speedy trial.").  The time period from May 2, 2024 through May 16, 2024 was
therefore properly excluded for ends-of-justice reasons.

Second, on July 1, 2024, the Court held a pretrial conference during which it discussed
the parties' motions *in limine* and ruled on several of the motions.  (Min. Entry dated July 1,
2024.)  The Court also directed the parties to confer and file additional briefing as to one of the
outstanding issues in the motions *in limine*, namely whether one of the government's proposed
witnesses' anticipated testimony was expert or fact witness testimony.  (*Id.*)  The Court ruled on
this outstanding portion of the motions *in limine* at the pretrial conference held on July 31, 2024.
(Min. Entry dated July 31, 2024.)  The government then filed its motion to exclude speedy trial
time on August 2, 2024, asking the Court to enter an order that (1) speedy trial time from July 1,
2024 through July 31, 2024 was automatically excluded pursuant to Section 3161(h)(1)(D) due
to the pending motion *in limine*, (2) speedy trial time be excluded from July 16, 2024 — the date
Defendants filed their request for a pre-motion conference in anticipation of their motion to
dismiss — until the Court ruled on the motion, or (3) in the alternative, the period from August
2, 2024 — the date of the filing of the government's motion — through August 19, 2024 — the
proposed date for the filing of Defendants' additional pretrial motions — be excluded in the
interest of justice.  (Gov't Mot.)  Speedy trial time was therefore automatically excluded for the
period from July 2, 2024 through July 31, 2024 due to the parties' pending motion *in limine* filed
on June 26, 2024, and from August 2, 2024 through August 19, 2024 due to the government's
pending motion to exclude speedy trial time, pursuant to Section 3161(h)(1)(D).  *See* 18 U.S.C.

§ 3161(h)(1)(D) (automatically excluding time due to a "delay resulting from any pretrial motion, from the filing of the motion through . . . the prompt disposition of[] such motion"); *Akhavan*, 523 F. Supp. 3d at 450 (concluding time was automatically excluded while a motion *in limine* was pending); *United States v. Curanovic*, No. 17-CR-404, 2017 WL 4402452, at *6 (E.D.N.Y. Oct. 2, 2017) ("[The defendant's] speedy trial clock has been stayed as of . . . the date the government filed its motion to exclude speedy trial time[.]"); *United States v. Juan*, No. 20-CR-134, 2021 WL 168278, at *5 (E.D. Cal. Jan. 19, 2021) (excluding time based on a pending motion to exclude time pursuant to Section 3161(h)(1)(D)); *cf. Henderson v. United States*, 476 U.S. 321, 331 (1986) ("The provisions of the Act are designed to exclude all time that is consumed in placing the trial court in a position to dispose of a motion.")[20]

Only one day has therefore elapsed for the purposes of the Speedy Trial Act clock — August 1, 2024 — which falls well short of the seventy days permitted under the Act.  Even if the Court did not exclude either of these periods of time, the period of time from May 2, 2024 through May 16, 2024 consisted of fifteen days, and the period of time from July 2, 2024 through August 18, 2024 consisted of forty-eight days, resulting in a total of sixty-three days of nonexcluded time, which would still fall within the seventy days permitted under the Act.

The Court therefore denies Defendants' motion to dismiss the Indictment on Speedy Trial Act grounds.

---

[20]  In light of this determination, the Court grants the government's motion to exclude speedy trial time to the extent it sought to exclude time for the periods from July 1, 2024 through July 31, 2024 and August 2, 2024 through the resolution of the government's motion to exclude time and Defendants' motions to dismiss and for the release of *Brady* materials.  (*See* Gov't Mot.)

### ii.   Constitutional speedy trial rights

Defendants argue that the Court should dismiss the Indictment because their Sixth Amendment speedy trial rights have been violated.  (Defs.' Speedy Trial Mem. 33.)  In support, Defendants contend that (1) the length of the delay, five years, is presumptively prejudicial under both Second Circuit and Supreme Court precedent; (2) the reason for the delay is the government's "negligence and chronic lack of diligent preparation"; (3) Defendants have repeatedly asserted their right to a speedy trial by noting their willingness and desire to move forward with trial, but have not previously filed a speedy trial motion because "evidence of the government's misconduct only recently came to light"; and (4) prejudice has resulted from the five-year delay.  (*Id.* at 33–38.)

The government argues that Defendants' constitutional speedy trial rights have not been violated.  (Gov't Opp'n 42.)  In support, the government argues that: (1) although the five-year time period between the filing of the Indictment and the scheduled trial date is significant, it must be considered in connection with the nature of the charges at issue, which consist of complex conspiracies, (*id.* at 42); (2) the government also argues that the reasons for the delay weigh against dismissal because the delay is attributable not only to its own late productions but also to continuances requested by Defendants, time needed to consider Defendants' pretrial motion practice, and delays caused by the COVID-19 pandemic, (*id.* at 43); (3) Defendants have waited nearly five years to assert their speedy trial rights, and have "allowed [Defendants] to incur meaningful benefits," (*id.* at 43–44); and (4) Defendants have not experienced the requisite prejudice necessary to implicate their rights under the Sixth Amendment, (*id.* at 44–45).

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI.  To determine whether trial

26

delays caused a violation of a defendant's constitutional speedy trial right, the Court must

consider: (1) "the length of [the] delay"; (2) "the reason[s] for the delay"; (3) "the defendant's

assertion of his right"; and (4) "prejudice to the defendant." *United States v. Moreno*, 789 F.3d

72, 78 (2d Cir. 2015) (alterations omitted) (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972));

*United States v. Jakes-Johnson*, No. 20-2310, 2021 WL 2944574, at *3 (2d Cir. 2021) (quoting

*United States v. Cain*, 671 F.3d 271, 296 (2d Cir. 2012), for the same); *United States v. Black*,

918 F.3d 243, 254 (2d Cir. 2019) (same).  Further, the Supreme Court in *Barker* instructed courts

that prejudice to a defendant should be analyzed in accordance with the interests that the Sixth

Amendment right to a speedy trial is designed to protect, which include (1) "to prevent

oppressive pretrial incarceration"; (2) "to minimize anxiety or concern of the accused"; and

(3) "to limit the possibility that the defense will be impaired."  407 U.S. at 532.  Impairment of

defense is considered the most serious in the analysis of prejudice.  *Moreno*, 789 F.3d at 81; *see*

*United States v. Abad*, 514 F.3d 271, 275 (2d Cir. 2008) (recognizing the need for specific

prejudice to find a speedy trial violation).

### 1.   Length of delay

The delay in this case is approximately five years, which is presumptively prejudicial and

triggers further analysis of the three remaining *Barker* factors.  *See Black*, 918 F.3d at 255

(noting that over five years is an "extraordinary" delay sufficient to render it presumptively

prejudicial); *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992) (determining that delays

approaching twelve months are presumptively prejudicial); *Morgan*, 493 F. Supp. 3d at 218

(finding two-year delay presumptively unreasonable).  However, while presumptively

prejudicial, the Second Circuit has found no violation existed in cases with longer delay periods.

*See Flowers v. Warden, Conn. Corr. Inst.*, 853 F.2d 131, 133 (2d Cir. 1988) (collecting cases

with delays ranging from twenty-one months to six years where no speedy trial violation was found).

### 2.    Reason for delay

The delay consists primarily of (1) delays sanctioned by the Court in light of the global COVID-19 pandemic, (2) adjournments of trial due primarily to the government's failure to timely disclose discovery material, and (3) delays resulting from Defendants' or joint requests for adjournments and pretrial motions.

First, delays due to the COVID-19 pandemic do not weigh against either the government or Defendants. *See United States v. Pharmes*, No. 22-221, 2023 WL 6055952, at *3 (2d Cir. 2023) (concluding the defendant's speedy trial rights were not violated because the continuances were justified by, among other things, "the disruptions occasioned by the COVID-19 pandemic"); *United States v. Zhukov*, No. 21-2981, 2023 WL 3083284, at *2 (2d Cir. 2023) (concluding the district court did not abuse its discretion where it concluded that a delay due in part to the COVID-19 pandemic did not warrant dismissal on speedy trial grounds); *Morgan*, 493 F. Supp. 3d at 219 (recognizing delay due to the COVID-19 pandemic as necessary and valid); *Akhavan*, 523 F. Supp. 3d at 451 (delay due to the pandemic is "outside of the [g]overnment's control").

Second, more than one year of delay was attributable solely to the government's failure to timely disclose discovery material, as the trial date has been postponed several times since the original date of June 20, 2023, and is now scheduled for November 4, 2024.  (Min. Entry dated Mar. 31, 2023; Min. Entry dated Aug. 9, 2024.)  As discussed *supra*, however, the Court has found that this was the result of the government's negligence rather than a deliberate delay seeking to obtain an advantage over Defendants.  This delay therefore weighs slightly against the

government.  *See Black*, 918 F.3d at 260 ("[A]lthough negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." (quoting *Doggett*, 505 U.S. at 657)); *Morgan*, 493 F. Supp. 3d at 219–20 (recognizing that a "[d]eliberate delay, which is delay intended to confer an advantage over a defendant, weighs most heavily against the government" and a "[n]eutral delay, resulting from government negligence and overcrowded court dockets, is less weighty" (citing *Barker*, 407 U.S. at 531)).

Finally, the remainder of the delay is attributable to Defendants' requests, or joint requests, for continuances and Defendants' own pretrial motions, and therefore this portion of the delay does not weigh against the government.[21]  *See United States v. Blanco*, 861 F.2d 773, 778 (2d Cir. 1998) ("A defendant's claim that the government violated her right to a speedy trial is seriously undermined when the defendant, and not the government, is the cause of the delay."); *United States v. McIntyre*, No. 07-CR-6174, 2017 WL 1842703, at *6 (W.D.N.Y. May 5, 2017) (same); *United States v. Schlegel*, No. 06-CR-550, 2009 WL 706173, at *6 (E.D.N.Y. Mar. 16, 2009) ("A defendant cannot acquiesce and contribute to a delay, and then simultaneously argue that the delay violates [his constitutional] speedy trial rights." (citing *Gambino*, 59 F.3d at 360)).

---

[21]  (*See* Mot. to Continue, Docket Entry No. 119; Mot. to Continue, Docket Entry No. 131; Mot. to Continue, Docket Entry No. 138; Mot. to Continue, Docket Entry No. 149; Mot. to Continue, Docket Entry No. 151; Mot. to Continue, Docket Entry No. 155; Mot. to Continue, Docket Entry No. 160; Mot. to Continue, Docket Entry No. 179; Mot. to Continue, Docket Entry No. 187; Mot. to Continue, Docket Entry No. 198; Mot. to Continue, Docket Entry No. 205; Mot. to Continue, Docket Entry No. 217; Mot. to Continue, Docket Entry No. 228; Mot. to Continue, Docket Entry No. 237; Mot. to Continue, Docket Entry No. 297.)

This factor therefore, at most, weighs lightly in favor of finding a Sixth Amendment violation.

### 3. Defendants' assertion of the right

Defendants do not point to any assertion of their speedy trial rights before July of 2024, when discussions regarding adjourning the August of 2024 trial date began due to the disclosure of the government's 3500 materials.  (Defs.' Speedy Trial Mem. 36.)  Defendants argue that they did not previously file a motion to dismiss for violation of their speedy trial rights "because evidence of the government's misconduct only recently came to light," but they also note that the adjournment of the June of 2023 trial date was due to the government's late disclosure of the material from the 191 Patchen Devices.  (*Id.* at 36–37.)  Defendants therefore were aware that the first two adjournments were due to the need to review the government's untimely disclosure of the 191 Patchen Devices, but did not assert their speedy trial rights at that time.  This factor therefore weighs against finding a Sixth Amendment violation.  *See, e.g.*, *United States v. Black*, 845 F. App'x 42, 48 (2d Cir. 2021) ("[T]he fact that it took [the defendant] so long to raise the issue [of a speedy trial] weighs heavily in the government's favor."); *United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990) ("[B]oth defendants waited roughly [twenty-two] months before advancing their speedy trial claims, and this hardly renders plausible their contention that an expeditious resolution of their cases was a matter of pressing constitutional importance for them."); *United States v. Arrington*, No. 15-CR-33, 2022 WL 1784808, at *11–12 (W.D.N.Y. June 1, 2022) (finding that, even though the defendant asserted his right to a speedy trial "unequivocally," this weighed against finding a constitutional violation in part because he waited nearly two years after the start of the speedy trial clock to begin asserting his rights).

#### 4.   Prejudice to Defendants

The final factor also weighs against finding a Sixth Amendment violation.  Courts "assess the prejudice to criminal defendants 'in the light of the interests . . . the speedy trial was designed to protect' — namely, '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" *Black*, 918 F.3d at 264 (quoting *Barker*, 407 U.S. at 532).

Although Defendants were subject to pretrial conditions such as home confinement and location monitoring, they were subject to pretrial incarceration for only two weeks, which falls short of "oppressive pretrial incarceration."  *Barker*, 407 U.S. at 532–34 (finding that the prejudice to the defendant "was minimal" even where he "spen[t] 10 months in jail before trial" and then was released on bond for the remainder of the period); *United States v. Alvarez*, 541 F. App'x 80, 84–85 (2d Cir. 2013) (finding "little, if any, prejudice," despite "years of pre-trial incarceration"); *United States v. Gates*, No. 17-CR-92, 2020 WL 6218707, at \*13 (W.D.N.Y. Sept. 30, 2020) (finding that the defendant's forty-four month incarceration pending trial was not a "uniquely oppressive" pretrial detention), *report and recommendation adopted*, 2020 WL 6205814 (W.D.N.Y. Oct. 22, 2020).

Although Defendants have been "prejudiced to some extent" by living for five years "under a cloud of suspicion and anxiety," they have not shown that the delay has caused them a heightened level of anxiety or concern as compared to those faced by most defendants.  *See, e.g.*, *Akhavan*, 523 F. Supp. 3d at 451 (finding no Sixth Amendment violation where the defendant argued he suffered prejudice due to "psychological trauma associated with incarceration during the pandemic"); *United States v. Kaetz*, No. 21-CR-71, 2021 WL 1251711, at \*7 (D.N.J. Apr. 5, 2021) (determining that the defendant's "general concerns of COVID-19 in prison" did not

amount to "oppressive" incarceration under *Barker*); *see also United States v. Powell*, No. 95-CR-664, 1999 WL 32930, at *5 (S.D.N.Y. Jan. 21, 1999) (noting that "considerable anxiety normally attends the initiation and pendency of criminal charges; hence, only 'undue pressures' are considered" (quoting *United States v. Santiago–Becerril*, 130 F.3d 11, 23 (1st Cir. 1997))).

Finally, Defendants argue that they "endure mounting prejudice in their ability to prepare their defense, as records are old and memories have faded," (Defs.' Speedy Trial Mem. 37), and assert that "at least one witness has died," (Defs.' Speedy Trial Reply 32).  Defendants do not specify, however, what evidence they no longer have access to due to the delay, or how the unavailability of the witness may disadvantage them at trial.  They have thus not shown that they face a "significant trial-related disadvantage in order to establish a speedy-trial violation." *United States v. Cain*, 671 F.3d 271, 297 (2d Cir. 2012); *see also, e.g.*, *United States v. New Buffalo Amusement Corp.*, 600 F.2d 368, 379 (2d Cir. 1979) (finding a violation where witnesses crucial to defense could no longer be located, and other witnesses who previously had agreed to testify refused to do so); *United States v. Vispi*, 545 F.2d 328, 334–35 (2d Cir. 1976) (finding a violation where delay made locating old records and dealing with dimmed recollections "a formidable task"); *United States v. Roberts*, 515 F.2d 642, 646 (2d Cir. 1975) (finding a violation where the government's delay disqualified the defendant for youthful offender status).

After weighing the *Barker* factors, the Court concludes that Defendants' Sixth Amendment rights to a speedy trial have not been violated, and denies their motion to dismiss the Indictment on speedy trial grounds.

## III.  Conclusion

For the foregoing reasons, the Court grants in part the government's motion to exclude

time and denies Defendants' motion to dismiss the Indictment on speedy trial grounds.

Dated: October 5, 2024
       Brooklyn, New York

SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge